UNITED STATES of America ex rel. Jeddy WILKINS

v.

William J. BANMILLER, Warden, State Correctional Institution, Philadelphia, Pennsylvania.

No. Misc. 2253.

United States District Court
E. D. Pennsylvania.
April 25, 1962.

Mary Alice Duffy, Philadelphia, Pa., for petitioner.

James C. Crumlish, Jr., Dist. Atty., Stanley M. Schwarz, Asst. Dist. Atty., Philadelphia, Pa., for respondent.

JOSEPH S. LORD, III, District Judge.

This is a petition for a writ of habeas corpus by a state prisoner. Relator was indicted for murder and at the time of trial in 1951, he entered a plea of guilty. After a hearing, a three-judge court en banc found relator guilty of murder in the first degree and sentenced him to life imprisonment. No appeal was taken at that time.

A petition for writ of habeas corpus was filed in the state court in 1959. That petition was discharged without hearing by the Court of Common Pleas No. 2 of Philadelphia County. The Pennsylvania Supreme Court affirmed, Commonwealth ex rel. Wilkins v. Banmiller, 401 Pa. 347, 164 A.2d 333 (1960). Certiorari was denied by the United States Supreme Court, Wilkins v. Banmiller, 364 U.S. 944, 81 S. Ct. 464, 5 L.Ed.2d 374 (1961).

This petition was thereafter filed, and then District (now Circuit) Judge J. Cullen Ganey ordered a hearing. The matter was continued to afford relator an opportunity to obtain counsel, and on November 13 and 21, 1961, relator was present with counsel and presented evidence.

■ Relator complains of (1) improper remarks of one of the trial judges, Judge Kun, which indicate his misconception of the law and the evidence, all of which appears in the transcript of the trial; (2) improper acts of relator's counsel in allegedly coercing and fraudulently inducing the plea of guilty upon a misrepresentation that a deal had been made with the District Attorney and the court for a light sentence, and upon the further misrepresentation of counsel that he had investigated the case and obtained statements from witnesses which would convict relator, although no such investigation had been made; (3) improper conduct of the prosecutor in allegedly presenting false evidence.[1]

■■ Any alleged error on the part of Judge Kun is a matter of record and if it was error, could have been corrected on appeal. Ordinarily, the failure to exhaust available state remedies precludes the grant of a writ of habeas corpus: 28 U.S.C.A. § 2254; Brown v. Allen, 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469 (1953). Relator, however, has testified, and we credit his testimony, that after his trial he never heard from his counsel and was ignorant of his right to appeal. But the issue is the availability of a state remedy; it is not the petitioner's good faith in failing to use it: United States ex rel. Kozicky v. Fay, 248 F.2d 520 (C.A.2, 1957).

---

1. As to this, it is enough to say that no such complaint was ever presented to the state courts and we therefore may not pass on it.

■ Relator's petition for a writ in the state courts does not cure his earlier failure to appeal. It is clear that under Pennsylvania law the proper remedy for the correction of record errors is by appeal and not by habeas corpus: Commonwealth ex rel. Bishop v. Maroney, 399 Pa. 208, 159 A.2d 893 (1960). A state may, of course, disregard the improper procedure and consider the complaint on its merits. Under such circumstances, the invocation of an improper state remedy may constitute an exhaustion, but this is so only on a clear indication that the federal question was considered on its merits: United States ex rel. Cuomo v. Fay, 257 F.2d 438, 442 (C.A.2, 1958). Here the federal question asserted by petitioner is whether or not he was so overreached by Judge Kun that his constitutional rights were invaded. This, of course, is necessarily different from a consideration of the sufficiency of the evidence,—a matter we are not free to review: United States ex rel. Saunders v. Myers, 276 F.2d 790 (C.A.3, 1960). And it was only this latter point which the Court of Common Pleas considered on its merits. Although Judge Kun's conduct was one of the grounds alleged in the state habeas corpus petition, there is no indication that the Court of Common Pleas or the Pennsylvania Supreme Court, which affirmed Per Curiam, gave any consideration whatsoever to the merits of the constitutional complaint.

It follows that as to the first ground on which the writ is sought, the petitioner has failed to exhaust available state remedies within the meaning of § 2254, and as to this ground the writ must be denied.

■ Petitioner's second ground for the writ complains of the alleged improper acts of his counsel. None of these, of course, appear on the record of the original trial, and therefore no appeal could have been taken as to this issue. United States ex rel. McCann v. Adams, 320 U.S. 220, 64 S.Ct. 14, 88 L.Ed. 4 (1943). Relator, having presented the issue to the state courts in his petition for habeas corpus,[2] is now properly here for a determination of the merits. Further, it appears that allegations of lack of effective assistance of counsel will be considered on the merits by the Pennsylvania courts in habeas corpus proceedings despite a previous failure to appeal: Commonwealth ex rel. Sleighter v. Banmiller, 392 Pa. 133, 139 A.2d 918 (1958). Although the Pennsylvania Supreme Court in Wilkins' case did not rule on the merits of relator's contentions, this is not a necessary prerequisite to our consideration of this phase of the petition, since the facts were not of record and not reviewable on appeal. "It is enough if the prisoner, pursuant to a proper procedure, place before the State courts an opportunity to adjudicate his federal claim upon the merits." United States ex rel. Cuomo v. Fay, supra, 257 F.2d at 441. It appearing that as to non-record facts habeas corpus is a proper state proceeding, the merits of relator's claim are appropriately before us.

Relator's conviction stems from a shooting which he claims was accidental. During an argument at a bar, Wilkins claims to have seen one of the participants pull out a gun. Wilkins then drew a gun which discharged, he says, when someone knocked into his arm. The only witness to this phase of the events merely saw the gun pointed up in the air immediately after it was fired. After he was

---

2. "The petitioner also contends that he was inadequately represented by counsel in that the attorney engaged for him by his mother failed to interview witnesses and led him to believe that he would receive a light sentence. A careful reading of the record indicates no improper action on the part of counsel. However, the fact that a criminal, after conviction, believes that his trial was not wisely conducted by his counsel furnishes no ground for the issuance of a writ of habeas corpus. See Commonwealth ex rel Norman v. Banmiller, 395 Pa. 232, 237 [149 A.2d 881]. It is significant to note that this contention was not raised until more than nine years after the trial took place.": Commonwealth ex rel. Wilkins v. Banmiller, C.C.P. No. 5, Sept. Term, 1959, No. 2974, Opinion filed January 7, 1960.

arrested, Wilkins pleaded not guilty. His family hired an attorney, one Hardin,[3] who visited relator in jail on several occasions. Wilkins maintained that the shooting was accidental and insisted that he would not plead guilty, but counsel finally prevailed upon relator to change his plea. During this time relator claims he tried to discharge his attorney because of the disagreement as to his plea. His mother convinced him to continue with Hardin, since she had already paid him $500 and could not afford to hire another lawyer.

The attorney told relator, and we believe this part of the testimony, that there was no first degree murder, and that he had arranged the matter with the District Attorney and with the court so that Wilkins would receive a light sentence if he pleaded guilty. Both relator and his mother testified to such conversations. The attorney also told Wilkins that he had interviewed the witnesses and their testimony would convict him. They would testify, according to the lawyer, that they saw Wilkins deliberately pull the gun and shoot the victim. These witnesses testified at our hearing that they never saw the attorney until the morning of the trial. We accept relator's version of these facts.

On the day of the trial, relator withdrew his plea of not guilty and entered a plea of guilty. Under Pennsylvania law, a plea of guilty to murder is a plea of guilty generally. A hearing is then held by the court to determine the degree of guilt. The burden is on the Commonwealth to establish that the offense was in the first degree: Commonwealth ex rel. Dandy v. Banmiller, 397 Pa. 312, 155 A.2d 197 (1959). As we have noted, after petitioner's hearing, the court found him guilty of murder in the first degree and sentenced him to life imprisonment.

Relator now complains that the actions of his attorney deprived him of due process. Mere inappropriate advice to plead guilty is not of constitutional dimensions: Richardson v. Baldi, 139 F. Supp. 928 (M.D.Pa., 1956). This is so where the choice made by the defendant is voluntary and with knowledge of the possible consequences, and despite the fact that counsel misrepresented the fact that a deal had been made for a light sentence; Thomson v. Huff, 80 U.S.App. D.C. 165, 149 F.2d 842 (D.C.Cir., 1945); Dorsey v. Gill, 80 U.S.App.D.C. 9, 148 F.2d 857 (1945). "A mere disappointed expectation of great leniency does not vitiate a plea". Monroe v. Huff, 79 U.S. App.D.C. 246, 145 F.2d 249 (1944). In the cited cases there were no allegations that any part was taken in the misrepresentation by anyone other than the prisoner's attorney, and this fact was noted by the court in Dorsey v. Gill, supra, 148 F.2d at 876.

We are, it is true, concerned here with more than inappropriate advice to plead guilty, and with more than a promised light sentence. As we view this case, the significant fact is the deliberate misrepresentation by the attorney of the prospective testimony of certain witnesses. But the due process standard is solely whether or not the state played any part in the wrong done the accused.

In Application of Hodge, 262 F.2d 778 (C.A.9, 1958) Judge Pope denied a certificate of reasonable cause applied for after the district court had denied a petition for writ of habeas corpus. It had been alleged in Hodge that a plea of guilty had been coerced by court appointed attorneys, and that these attorneys had refused to investigate the case. No federal question was found since none of the conduct complained of was known by or was the responsibility of the state or the judge who accepted his plea.

That responsibility on the part of the state must appear in order to constitute a denial of due process is also the law of this Circuit. In United States ex rel. Darcy v. Handy, 203 F.2d 407 (C.A.3, 1953), the court held that mishandling

---

3. The fact that Hardin has since been disbarred may lend some credibility to petitioner's allegations.

by counsel of trial tactics is not a denial of due process unless such incompetence is so apparent as to call for intervention of the trial judge. This standard was adhered to recently in In re Ernst's Petition, 294 F.2d 556 (C.A.3, 1961). There is "a vast difference between lacking the effective assistance of competent counsel and being denied the right to have the effective assistance of competent counsel," Hudspeth v. McDonald, 120 F.2d 962, (C.A.10, 1941) quoted with approval in Darcy, supra, 203 F.2d at 426.

At relator's trial there would have been nothing apparent to the court which would have indicated the underhanded method in which the attorney shirked his duty to his client and procured a guilty plea.[4] The matters complained of here occurred prior to the trial and were unknown to the court or the prosecutor. On the facts before it, a plea of guilty was not so apparently unwarranted as to put the state on notice of any misconduct. Relator's trial may not have been a completely "fair" one in the conceptualistic sense. However, intervention by this court requires that the denial of relator's rights be the doing of the state.[5] There is no indication here that the state participated in any such denial, and the writ must be denied.

The petition for a writ of habeas corpus is denied.

4. Mention is made in relator's brief of incompetence of counsel In the handling of the trial, as for example, inadequate cross-examination. Trial tactics of this nature are generally not reviewable. Darcy, supra; Ernst, supra.

5. Johns v. Smyth, 176 F.Supp. 949 (E.D. Va., 1959) granted a writ where court appointed, as opposed to private, counsel admittedly could not and did not conscientiously represent the defendant. If Johns is limited to the case of court appointed counsel, " * * * [w]hether in a borderline case this difference might tip the scales in favor of petitioner's claim that the state had not discharged its full constitutional duty to provide him with a fair trial, we need not decide. * * * ": In re Ernst's Petition, supra, 294 F.2d at 558. If Johns is not so limited, we disagree with its result.