IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE

## JERRY RAY, Executor of the Estate of James Earl Ray v. STATE OF TENNESSEE

**Direct Appeal from the Probate Court for Davidson County**
**No. 98P912  Frank G. Clement, Jr., Probate Judge**

---

**No. M1999-00237-COA-R3-CV - Decided April 18, 2000**

---

This appeal arises from a dispute over property in the custody of the Criminal Court Clerk of Shelby County.  In 1969, the Decedent, James Earl Ray, was convicted of the murder of Dr. Martin Luther King, Jr., after the Decedent pled guilty to this charge in the Criminal Court of Shelby County.  In the years following his conviction, the Decedent filed numerous petitions in both state and federal courts seeking post-conviction relief on various grounds.  These criminal proceedings finally concluded upon the Decedent's death in 1998.  Thereafter, Jerry Ray, the Decedent's brother and the Executor of the Decedent's estate, filed this lawsuit against the State of Tennessee in the Probate Court of Davidson County, seeking the return of certain property that had been used as evidence in the Decedent's criminal proceedings and that remained in the custody of the Shelby County Criminal Court Clerk.  The Probate Court granted the State's motion to dismiss because the court ruled that the Executor's claim was barred by the doctrines of sovereign immunity and collateral estoppel.  We affirm the Probate Court's dismissal of the Executor's complaint; however, we do so upon the alternative ground that the Probate Court lacked the authority to order the transfer or disposition of property held in the custody of the Criminal Court Clerk.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Probate Court Affirmed; and Remanded**

FARMER, J., delivered the opinion of the court, in which CRAWFORD, P.J., W.S., and LILLARD, J., joined.

Paul J. Bruno, Nashville, Tennessee, for the appellant, Jerry Ray, Executor of the Estate of James Earl Ray.

Paul G. Summers, Attorney General and Reporter, and Dianne Stamey Dycus, Deputy Attorney General, for appellee, State of Tennessee.

**OPINION**

In March 1969, the Decedent pled guilty to the first-degree murder of Dr. Martin Luther King, Jr., and was sentenced to ninety-nine years in the state penitentiary. Thereafter, the Decedent sought a new trial based upon his claim that his guilty plea was not entered knowingly, intelligently, and voluntarily. Our supreme court rejected this claim and denied the Decedent's petition for writ of *certiorari*. *See Ray v. State*, 451 S.W.2d 854 (Tenn. 1970). In the years following the supreme court's denial of the Decedent's petition, the Decedent pursued at least seven claims for post-conviction relief in state and federal courts. *See Ray v. State*, 984 S.W.2d 236, 237 (Tenn. Crim. App. 1997). Apparently, the Decedent continued to pursue his seventh petition for post-conviction relief until his death in April 1998. *See State v. Ray*, 984 S.W.2d 239 (Tenn. Crim. App. 1998). The Decedent's criminal proceedings concluded upon his death. *See Carver v. State*, 398 S.W.2d 719, 720 (Tenn. 1966).

After the Decedent's death, the Decedent's brother, Jerry Ray, was appointed Executor of the Decedent's estate by the Probate Court of Davidson County. The present lawsuit commenced in October 1998, when the Executor filed a motion in the Probate Court asking the court to order that certain property currently in the possession of the Clerk of the Criminal Court of Shelby County be transferred into the possession of the Clerk of the Probate Court of Davidson County. Specifically, the Executor asked the Probate Court to transfer possession of the following property: (1) one .30-06 caliber Remington hunting rifle; (2) one transistor radio; (3) one pair of binoculars; (4) one Schlitz beer can; and (5) underwear, toothbrush, and other miscellaneous personal property. The Executor subsequently filed a complaint against the State of Tennessee seeking the return of the subject property. The Executor's complaint asserted that

> the defendant, acting through its duly elected official, the past, present and future . . . Clerk of the Criminal Court of the 30th Judicial District, . . . wrongfully refuses to deliver up possession of property owned by James Earl Ray used in the prosecution of the decedent for the alleged murder of Doctor Martin Luther King and inasmuch as that proceeding has been terminated there is no legal reason for said property to be withheld any longer.

The Attorney General filed a notice of appearance on behalf of the State of Tennessee. In the notice of appearance, the Attorney General asserted that the State had "ownership and rights of disposition of this property" by virtue of a 1993 decision of this court, *see Hays v. Montague*, 860 S.W.2d 403 (Tenn. Ct. App. 1993), and a 1994 enactment of the General Assembly, *see* Tenn. Code Ann. § 10-7-510 (Supp. 1997). The cited statute purported to authorize criminal court clerks to transfer custody and ownership of records, documents, and physical evidence in their possession to higher educational institutions, museums, libraries, or other not-for-profit corporations, provided that the transferred items constituted "public records" of "historical significance" and provided that certain other conditions were met. *See* Tenn. Code Ann. § 10-7-510(b) (Supp. 1997).[1] After the

---

[1]Section 10-7-510 contains the following provisions:

**Transfer of documents from criminal cases to not-for-profit**

Executor filed his complaint against the State of Tennessee, the State filed a motion to dismiss

---

**depositories. --** (a)      The district attorney general of a judicial district, after giving written notice of the proposed transfer prior to such transfer to the presiding officer of the legislative body in which such record, document or evidence is located, may permanently transfer custody and ownership of all original records, documents and physical evidence in the district attorney general's possession that was collected, compiled and maintained in a particular criminal case or investigation to a university or other institution of higher education, museum, library or other not-for-profit corporation organized for the primary purpose of preserving and displaying items of historical significance, if:

(1)      The university, museum, library or not-for-profit corporation has formally requested transfer of the records, documents and evidence in a particular case or investigation;

(2)      The documents, records and evidence requested are, in the opinion of such district attorney general, of historical significance and their display would enhance public understanding, education or appreciation of a particular time or event in history;

(3)      The documents, records and evidence requested have by operation of law become public records; and

(4)      The district attorney general or clerk duplicates or photographs all documents and records transferred in a manner approved by the public records commission.

(b)      If such original records, documents or physical evidence are in the sole custody of the criminal court clerk of any judicial district, such clerk may permanently transfer custody and ownership of such records, documents or physical evidence with the approval of the district attorney general of the appropriate judicial district, after giving written notice of the proposed transfer prior to such transfer to the presiding officer of the legislative body for the jurisdiction in which such record, document or evidence is located.

(c)      If it is determined that such documents, records and evidence are to be transferred, the district attorney general shall make the final decision as to the date, time and method by which such transfer is effectuated.

(d)      Upon the transfer of such documents, records and evidence as provided by this section, any party desiring to view such material shall do so at the site where the material has been transferred.

(e)      As used in this section, "historical significance" means that the event giving rise to the documents, records or evidence being transferred occurred twenty (20) years or more prior to April 18, 1994.

(f)      This section does not apply to records or documents which are made confidential by any provision of law.

Tenn. Code Ann. § 10-7-510 (Supp. 1997).

pursuant to rule 12 of the Tennessee Rules of Civil Procedure. As grounds for its motion, the State contended that the Executor's claim against it was barred by the doctrines of sovereign immunity, *res judicata*, and/or collateral estoppel.

After conducting a hearing in June 1999, the Probate Court granted the State's motion to dismiss. In its order of dismissal, the Probate Court ruled that the Executor's "claim against the State of Tennessee seeking to obtain property allegedly owned by the decedent at the time of his death [was] barred by the doctrine of sovereign immunity" and, further, that the Executor was "collaterally estopped from seeking to obtain said property based on the holding of the Tennessee Court of Appeals in *Hays v. Montague*, 860 S.W.2d 403 (Tenn. Ct. App. 1993)." On appeal, the Executor contends that both of these rulings were in error.

We agree with the State's assertion that the Probate Court properly dismissed the Executor's complaint, but on somewhat different grounds than those relied upon by the Probate Court. *See Continental Cas. Co. v. Smith*, 720 S.W.2d 48, 50 (Tenn. 1986) (indicating that court "will affirm a decree correct in result, but rendered upon different, incomplete, or erroneous grounds"). The gravamen of the Executor's complaint was that the Criminal Court Clerk of Shelby County acquired possession of certain property belonging to the Decedent when the property was used as evidence in the Decedent's criminal prosecution and that, inasmuch as the criminal proceedings terminated upon the Decedent's death, no legal justification existed for the Criminal Court Clerk to retain this property. We conclude that the Probate Court lacked the authority to determine the disposition of property held in the custody of the Criminal Court Clerk after the Decedent's criminal proceedings terminated.

As our Court of Criminal Appeals recognized in a previous decision involving one of the Decedent's petitions for post-conviction relief, the trial court "has the inherent authority to determine the custody and control of evidence held in the [trial court] clerk's office." *Ray v. State*, 984 S.W.2d 236, 238 (Tenn. Crim. App. 1997). This authority includes "the right to exercise control over physical evidence after a case has been concluded." *Id*. at 238 n.4.[2]

---

[2]The Court of Criminal Appeals cited Tennessee Code Annotated sections 18-1-201 and 18-1-206. *See Ray*, 984 S.W.2d at 238 n.4. Section 18-1-201 authorizes and empowers court clerks "to make such disposition of records, dockets, books, ledgers and other documents as the judges of their respective courts may severally direct, subject to the provisions set out in §§ 18-1-202 – 18-1-205." Tenn. Code Ann. § 18-1-201 (1994). Section 18-1-206 governs the court clerk's disposition of "[p]hysical evidence other than documents and firearms used in judicial proceedings and in the custody of a court in cases where all appeals or potential appeals of a judgment have ended or when the case has been settled, dismissed or otherwise brought to a conclusion." Tenn. Code Ann. § 18-1-206(a) (1994). Among other procedures, section 18-1-206 requires the court clerk to notify attorneys of record of physical evidence in the clerk's custody, to prepare annual inventories, and to publish notices of proposed dispositions. *See id*. Interested parties who object to a proposed disposition may file a petition with the trial court. *See* Tenn. Code Ann. § 18-1-206(a)(4) (1994). Ultimately, the trial court must approve or reject the proposed disposition

Ordinarily, one court should not interfere with property "of which another court has custody or control through the latter's officer or representative." 21 C.J.S. *Courts* § 189, at 224 (1990). When a trial court clerk possesses property as an officer of the trial court, the clerk's possession of such property is subject to the trial court's orders. *See Massey v. Holmes*, 227 S.W.2d 25, 26 (Tenn. 1950). Our supreme court has explained that the reason for this rule is

> that while property . . . is in *custodia legis*,[3] the officer holding it is the mere hand of the court; his possession is the possession of the court, and to interfere therewith is to invade the jurisdiction of the court itself, an officer so situated being bound solely by the orders and judgments of the court whose mere agent he is, and having no right to make any disposition of such . . . property without the consent of his own court, express or implied.

*Massey*, 227 S.W.2d at 26 (quoting 4 Am. Jur. § 386, at 795) (footnote added).

This doctrine of noninterference also applies to criminal cases and the procedure thereunder. *See Outerbridge Horsey Co. v. Martin*, 120 A. 235, 236 (Md. 1923); *accord State v. Allen*, 66 N.W.2d 830, 837-38 (Neb. 1954). When a criminal court or its agent lawfully obtains custody of property, "to permit an interference with [this] possession would be to interfere with the jurisdiction of the court, and [to] divert the property, from the purposes for which it is held." *Outerbridge Horsey Co.*, 120 A. at 236. When property "is in *custodia legis*, and subject to the order of the court having criminal jurisdiction of the offense, . . . neither by attachment proceeding nor by injunction should the criminal court's power of disposition of the [property] be taken away or interfered with." *Allen*, 66 N.W.2d at 837. As one court observed, "[t]he criminal court . . . , in the first instance, has sole control of its own process and of the conduct of its own officers thereunder." *State v. George*, 181 S.E. 713, 715 (W. Va. 1935). Thus, "[o]fficers acting under, or pursuant to, the process of that

---

of each item. *See* Tenn. Code Ann. § 18-1-206(a)(5) (1994). Section 18-1-206 provides that physical evidence may be sold, destroyed, returned to the owner or the owner's attorney of record, or preserved by a specified organization for historical purposes. *See id*. Section 18-1-206 does not, however, "amend or repeal any of the provisions of any private act or acts which provide for the disposal of physical evidence or exhibits used in any judicial proceeding in any county having a population of over six hundred thousand (600,000) according to the 1980 federal census or any subsequent federal census." Tenn. Code Ann. § 18-1-206(b) (1994). *See, e.g.*, 1959 Tenn. Priv. Acts 185 (authorizing the Shelby County Criminal Court Clerk, as ordered and directed by "a Judge of one [of] the Criminal Courts of Shelby County," to dispose of "all abandoned, stolen and/or recovered property, . . . which is in said Clerk's custody and possession by virtue of said property having been held as evidence or exhibits in a criminal prosecution" after a period of six months "has elapsed from final adjudication of the case").

[3]Property is in *custodia legis* (in the custody of the law) when it has been lawfully taken by virtue of legal process. *Knobler v. Knobler*, 697 S.W.2d 583, 586 (Tenn. Ct. App. 1985); *Weaver v. Duncan*, 56 S.W. 39, 41 (Tenn. Ch. App. 1899).

court are accountable to that court for their conduct." ***Id***.

In accordance with the foregoing authorities, we conclude that the Probate Court lacked the authority to order the disposition of property in the lawful custody of the Criminal Court Clerk of Shelby County. Inasmuch as the Probate Court lacked the authority to order the Criminal Court Clerk to transfer possession of the property, we further conclude that the court properly dismissed the Executor's complaint seeking this relief.

We acknowledge that in ***Lawrence v. Mullins***, 449 S.W.2d 224 (Tenn. 1969), our supreme court recognized a claimant's right to bring a separate civil action seeking the return of property in the custody of the court clerk. In that case, however, the claimant filed his action in the Circuit Court of Hardeman County, the same circuit court that conducted the defendant's criminal proceedings. ***See Lawrence***, 449 S.W.2d at 225. Moreover, the claimant in that case was a third party who disputed the criminal defendant's ownership of the property in custody. ***See id***. at 228. Similarly, the case of ***Hays v. Montague***, 860 S.W.2d 403 (Tenn. Ct. App. 1993), involved a third party's dispute as to ownership of the property in custody. There, we stressed that our decision should "in no way be interpreted as having any effect on the custodial rights of the criminal court" pursuant to that court's orders. ***Hays***, 860 S.W.2d at 409.

The ***Lawrence*** and ***Hays*** decisions are consistent with decisions of other jurisdictions which recognize that, "if ownership is disputed, the claimant must resort to a civil remedy to establish his claim." ***State ex rel. Schillberg v. Everett Dist. J. Ct.***, 585 P.2d 1177, 1180 (Wash. 1978); ***see also Moore v. State***, 504 N.E.2d 586, 587-88 (Ind. Ct. App. 1987); ***Newman v. Stuart***, 597 So. 2d 609, 614-15 (Miss. 1992); ***State v. Earley***, 210 S.E.2d 541, 542-43 (N.C. Ct. App. 1975).[4] "[T]itle is not to be determined in a criminal proceeding, where the only proper parties are the defendant or defendants and the state or other governmental body involved." ***State ex rel. Schillberg***, 585 P.2d at 1180. When a motion for return of property is made in a criminal proceeding, "[t]he purpose of the [subsequent] hearing is to determine the right to possession, as between the claimant and the court or officers having custody of the property." ***Id***.

The present case does not involve a third party's claim to the subject property. Rather, the present lawsuit consists of a dispute as to the right to possession of the subject property between the Decedent's estate and the Criminal Court officer having custody of the property. Specifically, the Decedent's estate, through the Executor, seeks the return of the subject property, and the Criminal Court Clerk asserts the right to retain and/or dispose of the property by virtue of the ***Hays v. Montague***, 860 S.W.2d 403 (Tenn. Ct. App. 1993), decision and Tennessee Code Annotated section

---

[4]***But see In re Property Held by Detroit Police Dep't***, 367 N.W.2d 376, 377-78 (Mich. Ct. App. 1985) (holding that, where criminal defendants filed motion for return of seized money, and victims of defendants' crime claimed portion of funds, criminal court had jurisdiction to determine dispute and defendants were not required to file separate civil action).

10-7-510 (Supp. 1997).[5]  We hold that the proper forum in which to seek return of the subject property is the court having custody of that property.

The trial court's judgment is affirmed, and this cause is remanded for further proceedings consistent with this opinion.  Costs of this appeal are taxed to the Executor, Jerry Ray, for which execution may issue if necessary.

---

[5]The record contains no suggestion that the State has instituted forfeiture proceedings with regard to any of the items of property.  In *Hays v. Montague*, 860 S.W.2d 403, 407 (Tenn. Ct. App. 1993), we rejected the State's argument that the forfeiture statutes in effect in March 1968 authorized the forfeiture of the rifle.  Nevertheless, the third party's claim to ownership of the rifle failed because we concluded that the Decedent had abandoned the rifle prior to conveying his interest therein to the third party's predecessor in interest.  *Hays*, 860 S.W.2d at 408-09.